UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENNETH HESTER     Plaintiff

v.     CIVIL ACTION NO. 3:21-CV-578-RGJ

WHATEVER IT TAKES, ET AL     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendants, Whatever It Takes Transmissions & Parts, Inc. ("WIT"), Whatever It Takes Transmissions & Parts, Inc. Deferred Compensation Plan (the "Plan"), and Rodney Peters ("Peters") (collectively, "Defendants"), move to dismiss under Fed. R. Civ. P. 12(b)(6). [DE 11]. Plaintiff, Kenneth Hester ("Hester"), moves to remand this action to state court. [DE 12]. Briefing is complete and the matters are ripe. [DE 14; DE 15; DE 16]. For the reasons below, Hester's Motion to Remand [DE 12] is **GRANTED**, Hester's Request for Attorney's Fees and Costs is **DENIED** [DE 12]; and WIT's Motion to Dismiss [DE 11] is **DENIED AS MOOT**.

        **I.**     **BACKGROUND**

Defendant WIT established the Plan to be effective January 1, 2005. [DE 1-2 at 81]. The Plan states that it is "a nonqualified deferred compensation plan . . . designed to provide specific benefits to a select group of management and highly compensated employees who contribute materially to the continued growth, development, and future business success of [WIT], and to provide flexibility to the Employer in attracting and retaining highly skilled executive employees." [*Id.*]. Section 3 of the Plan provides that "[a]mounts payable under the Plan are not funded for tax purposes nor for purposes of [ERISA], and are paid exclusively from the general assets of the

employer." [*Id.* at 82]. Section 7 of the Plan provides that "[t]he Plan Administrator and the claimant shall follow the claims procedures set forth in Department of Labor Regulations §2560.503-1." [*Id.* at 86]. Section 10 of the Plan states that "the provisions of this Plan are construed, administered, and enforced in accordance with the laws of Kentucky, to the extent such laws are not superseded by Federal law." [*Id.* at 87]. Section 11 of the Plan states that "the Plan is intended to be exempt from otherwise applicable provisions of Title I of ERISA, and any ambiguities in construction shall be resolved in favor of an interpretation which will effectuate such intention." [*Id.*].

Defendants state that the Plan was registered as a Top Hat plan with the United States Department of Labor in November 2005. [DE 15 at 155]. Defendants also state that the Plan has had no more than five participants including Hester since its inception, and that WIT employed around 630 employees during 2016, 2017, and 2018. [*Id.*]. Defendants contend that the "average compensation of plan participants was more than four (4) times that of non-participants during the years 2016-2018." [*Id.*]. Defendants state that the "Plan sets forth the intended benefits (deferred compensation), the class of beneficiaries (selected management or highly compensated employees of WIT), the source of financing (the general assets of WIT, []), and the procedures for receiving benefits ([]; Department of Labor Regulations § 2560.503-1)." [*Id.* at 154-55].

Hester states that he was and "continues to be a participant in the Plan due to the fact that his Plan benefit has not been distributed to him," and that he was "a key employee of [WIT]." [DE 1-3 at 18-19; DE 12 at 124]. Defendants describe Hester's position as "CEO of WIT," the "highest ranking employee in the Company," and a "key employee who could participate in the plan, along with four other key employees." [DE 15 at 154.] Defendants assert that "'[a]ny management or

2

other key employee of WIT' who was designated by the board as eligible could participate in the Plan." [*Id.*].

Hester states that he was terminated from WIT "on August 5, 2018 in conjunction with the sale of his ownership interest in the company." [DE 1-3 at 18-19]. After his termination, Hester requested payout of benefits under the Plan on August 31, 2020. [DE 1-3 at 14; DE 15 at 155]. Hester's counsel wrote to the Plan Administrator on December 9, 2020, appealing the denial of his claim for benefits, and that the Plan Administrator Counsel responded the same day, telling him that he had "forfeited any right to payment under the deferred compensation plan when he breached his fiduciary duty to WIT." [DE 15 at 155-56]. Defendants assert they advised Hester that "he had the right to bring an action under Section 502(a) of ERISA." [*Id.* at 156].

On August 12, 2021, Hester sued Defendants in state court, alleging three claims, one for "Benefits Due Under the Plan," and two separate claims for "Breach of Fiduciary Duty" related to the Plan. [DE 1-3 at 21-23; DE 11-1 at 69]. On September 17, 2021, Defendants removed to federal court. [DE 1]. On September 24, 2021, Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6). [DE 11]. On October 4, 2021, Hester moved to remand to state court. [DE 12].

## II.    STANDARD

Hester's Motion to Remand challenges this court's jurisdiction. As a result, the Court must first consider the question of jurisdiction. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998). When considering a motion to remand, the Court looks to "whether the action was properly removed in the first place." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Defendants would have a right to remove this case if Hester "could have brought it in federal district court originally . . . as a civil action arising under the Constitution, laws or treaties of the United States." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S.

308, 312 (2005) (citing 28 U.S.C. §§ 1331, 1441(a)) (internal quotation marks and citations omitted). In most cases, a party invokes federal-question jurisdiction by pleading a cause of action created through federal law. *Id.* "To determine whether a case arises federal law within the meaning of § 1331, the Court must ascertain if a federal cause of action would appear on the face of a well-pleaded complaint." *Kentucky Fair Plan v. Kobe*, No. CIV.A. 1:99-CV-5-R, 1999 WL 33603121, at *1 (W.D. Ky. Aug. 25, 1999); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)). "Under this rule, a federal question must appear on the face of the complaint rather than as part of a defense, even if a federal-law defense is anticipated." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012).

The Supreme Court has created a limited exception to the well-pleaded complaint rule: the complete preemption doctrine. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 325 (6th Cir. 2007). Where Congress "intends that a federal statute should completely preempt an area of state law," state claims in the same area are "presumed to allege a claim arising under federal law" and may be removed to federal court, even where there is no federal question on the face of the complaint. *Id.* ERISA is one such statutory scheme. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). The party seeking removal bears the burden of showing that federal jurisdiction exists. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). "All doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). If the Court lacks original subject matter jurisdiction over a removed action, it must remand that action to state court. 28 U.S.C. § 1447(c).

### III.     ANALYSIS

Hester argues that his state law claims should be remanded to state court because the Plan is a non-qualified deferred compensation bonus plan not subject to the provisions of ERISA. [DE 12 at 123-25]. Defendants argue that Hester's state-law causes of action are completely preempted by ERISA and therefore removable, because the Plan is a Top Hat plan, and Hester's claims are for benefits due and breaches of fiduciary duty related to the Plan. [DE 1 at 2-4].

Hester also requests attorney's fees and costs incurred in conjunction with his Motion for Remand. [DE 12 at 129].

**1. Subject Matter Jurisdiction**

The Court first considers whether it has jurisdiction to hear this case. In considering whether it has subject matter jurisdiction, the Court looks at whether Hester's claims are subject to preemption. There are two types of ERISA preemption: (1) "complete preemption," a subject-matter "jurisdictional doctrine" that applies to disputes arising from removal, *Lowe v. Lincoln Nat'l Life Ins. Co.*, 821 F. App'x 489, 491 (6th Cir. 2020); and (2) "express preemption," related to a claim's substantive merit (as opposed to subject-matter jurisdiction), that "does not provide a basis for removal [and] creates only a traditional preemption defense." *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016). If Hester's causes of action are subject to complete preemption, this Court has subject matter jurisdiction, and Hester's motion to remand must be denied.

Under ERISA, "a claim is completely pre-empted . . . if the state law claim could be brought pursuant to ERISA's enforcement provision, [29 U.S.C.] § 1132(a)(1)(B)." *Harvey v. Life Ins. Co. of N. Am.*, 404 F. Supp. 2d 969, 973 (E.D. Ky. 2005) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–67 (1987)). A state claim falls within the scope of ERISA's enforcement provision if "(1) the plaintiff complains about the denial of benefits to which he is entitled only

because of the terms of an ERISA-regulated employee benefit plan; and (2) the plaintiff does not allege the violation of any legal duty (state or federal) independent of ERISA or the plan terms." *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013) (citing *Aetna Health Inc.*, 542 U.S. at 210.

Here, each of Hester's claims are for denial of benefits, and he does not allege the violation of a duty independent of the plan terms, as Count I is a claim for benefits, and Counts II and III are for breaches of fiduciary duty related to the claim for benefits. [DE 1-3 at 21-23]; *see Metropolitan Life Ins. Co.*, 481 U.S. at 65–67 (holding that claim for wrongful denial of benefits was enforceable under § 1132(a)(1)(B) and was thus completely preempted by ERISA); *Smith v. Provident Bank*, 170 F.3d 609, 613–14 (6th Cir. 1999) (converting state law fiduciary duty claim into an ERISA claim under § 1132(a)(2)), *and Harvey*, 404 F. Supp. 2d at 974 ("The Sixth Circuit has extended the principle of *Metropolitan Life* [preemption] to state law claims for breach of fiduciary duty"). Because Hester's claims are for denial of benefits and breaches of fiduciary duty related to that denial, his state law claims would fall within § 1132(a)(1)(B) as claims seeking to enforce rights under the terms of a plan, and will be completely preempted if the policy is within the definition of an ERISA plan. *See Metropolitan Life Ins. Co.*, 481 U.S. at 65–67 *and Fitzgerald v. Cont'l Assur. Co.*, No. CIV.A. 5:07-413-JMH, 2008 WL 5427635, at *3 (E.D. Ky. Dec. 30, 2008).

      *a. Existence of an ERISA Regulated Plan*

The parties disagree about whether an ERISA-regulated plan exists in this case. The "existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996). Prior to *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006),

courts often viewed whether an ERISA plan existed as jurisdictional. *See, e.g.*, *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001); *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990); *Taylor-Sammons v. Bath*, 398 F. Supp. 2d 868, 877 (S.D. Ohio 2005), *and Fulton v. W. Coast Life Ins. Co.*, No. 2:09-CV-2015-JPM-TMP, 2010 WL 2010790, at *3 (W.D. Tenn. May 19, 2010). "[I]n light of *Arbaugh* and its progeny," the Sixth Circuit has held that "the existence of an ERISA plan is a nonjurisdictional element of Plaintiffs' ERISA claim . . . under [29 U.S.C. § 1132](a)(1)(B), not a prerequisite for federal jurisdiction." *Daft v. Advest, Inc.*, 658 F.3d 583, 587–91 (6th Cir. 2011).

> An ERISA plan is statutorily defined as a:
>
> plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i) provides retirement income to employees, or
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A). "The most important consideration in construing a plan 'is the language of the plan itself as known by the employees, or as the employees should have known.'" *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006) (internal omitted) (citing *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 460 (6th Cir. 1991). The Sixth Circuit also looks at the nature of the plan, the surrounding circumstances, and asks whether "a reasonable person [could] ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002) (citing *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995)); *Hughes v. Zurz*, 298 F. App'x 404, 412 (6th

Cir. 2008) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982)) (internal quotations omitted); see also *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991) (adopting the *Dillingham* test).

### b. *"Top Hat" vs. "Bonus Plan"*

A "Top Hat" plan differs from typical ERISA plans. *See Haviland v. Metro. Life Ins. Co.*, 876 F. Supp. 2d 946, 966 (E.D. Mich. 2012), *aff'd,* 730 F.3d 563 (6th Cir. 2013). A "Top Hat" plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees[.]" 29 U.S.C. § 1051(2). Top hat plans are treated differently from welfare benefit plans; they are exempt from ERISA's substantive regulations yet fall within ERISA's reporting and enforcement provision. *See Simpson*, 187 F. App'x at 483–84 *and Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007). Thus, a Top Hat plan is an ERISA plan, and claims for benefits under a Top Hat plan are preempted under federal law. *See Simpson*, 187 F. App'x at 484. The Sixth Circuit has set forth four factors that it considers when determining whether a plan is a Top Hat plan under ERISA: "(1) the percentage of the total workforce invited to join the plan (quantitative), (2) the nature of their employment duties (qualitative), (3) the compensation disparity between Top Hat plan members and non-members (qualitative), and (4) the actual language of the plan agreement (qualitative)." *Bakri*, 473 F.3d at 678.

A bonus program that defers income is not an ERISA plan. A bonus program is one that "express purpose is to pay a financial 'bonus' or 'additional incentive' to employees to encourage performance or retention." *Wilson*, 930 F.3d at 435–36. A *systematic* deferral of bonus payments would be subject to ERISA. 29 C.F.R. § 2510.3-2(c). "A 'classic bonus situation' involves

'reward (higher cash value) for superior performance (higher corporate earnings)." *Wilson*, 930 F.3d at 435 (citing *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 933 (8th Cir. 1999)).

Hester did not attach the Plan in his Complaint, but Defendants provided the Plan as an exhibit to Defendants Motion to Dismiss, and the Court considers it in its analysis of whether the Plan is a Top Hat plan or a bonus plan.[1]

i. Top Hat Plan

As to the first consideration in the Court's analysis of whether the Plan may be a Top Hat Plan, the percentage of the total workforce invited to join the plan, Defendants argue that the Plan has had no more than five participants, including Hester, at any time since its inceptions, and that it employed around 630 employees during 2016, 2017, and 2018. [DE 15 at 155]. Hester did not respond to these assertions. If these numbers are accurate, this limits Plan participation, allowing only a small percentage of the total workforce to join the plan, and this factor would make it more likely that the Plan is a Top Hat plan. *See Cramer v. Appalachian Reg'l Healthcare, Inc.*, No. CIV.A. 5:11-49-KKC, 2012 WL 5332471, at *2 (E.D. Ky. Oct. 29, 2012)

Second, as to the nature of employment duties, Hester describes himself as "a key employee of [WIT]." [DE 1-3 at 18-19; DE 12 at 124]. Defendants describe Hester's position as "CEO of WIT," the "highest ranking employee in the Company," and a "key employee who could participate in the plan, along with four other key employees." [DE 15 at 154.] Defendants state that "[a]ny management or other key employee of WIT who was designated by the board as eligible

---

[1] "When ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal . . . [b]ut . . . may look beyond the pleadings to assess challenged facts." *Gentek Bldg. Products, Inc.*, 491 F.3d at 330. The challenged fact before the Court is whether the Plan is subject to ERISA. Hester referred repeatedly to the Plan in his Complaint, and Defendants referred repeatedly to the Plan in their Notice of Removal. [DE 1-3 at 16-24; DE 1 at 1-7]. Therefore, in ruling on this Motion, the Court will consider the Plan that the Defendants have attached to their Motion to Dismiss. [DE 11-2 at 81-87].

could participate in the Plan. [DE 15 at 154]. This limits the participants to high ranking management personnel with high levels of expertise and responsibility, making it more likely that the Plan is a Top Hat plan. *See Vest v. The Nissan Supplemental Exec. Ret. Plan II*, No. 3:19-CV-1021, 2020 WL 7695261, at *6 (M.D. Tenn. Dec. 28, 2020).

Third, as for the compensation disparity between Top Hat plan members and non-members, a "significant disparity" between the Top Hat participants and the other employees is required. *Cramer*, 2012 WL 5332471, at *2 (citing *Simpson v. Ernst & Young*, 879 F. Supp. 802, 816 (S.D. Ohio 1994), *aff'd,* 100 F.3d 436 (6th Cir. 1996)). Courts have found salary disparity ratios as low as 2:1 sufficient to satisfy this factor. *See id.* (citing *Callan v. Merrill Lynch & Co.*, No. 09 CV 0566 BEN (BGS), 2010 WL 3452371, at *11 (S.D. Cal. Aug. 30, 2010)). Defendants contend that the "average compensation of plan participants was more than four (4) times that of non-participants during the years 2016-2018." [DE 15 at 155]. Hester has not responded to this contention. It is an easy inference that there would be a compensation disparity between members of the plan who are apparently high ranking employees of the company, like CEO Hester, and non-members of the plan, who were not high-ranking executives at the company. *See Vest*, 2020 WL 7695261, at *6. This factor would imply that the Plan is a Top Hat plan. *Id.*

Finally, the Plan language states, that it is "a non-qualified deferred compensation plan . . . a supplemental benefit plan designed to provide specific benefits to a select group of management and highly compensated employees who contribute materially to the continued growth, development, and future business success of [WIT], and to provide flexibility to the Employer in attracting and retaining highly skilled executive employees." [DE 1-2 at 81]. Section 7 of the Plan provides that "[t]he Plan Administrator and the claimant shall follow the claims procedures set forth in Department of Labor Regulations §2560.503-1." [*Id.* at 86]. Section 10 of the Plan states

that "the provisions of this Plan are construed, administered, and enforced in accordance with the laws of Kentucky, to the extent such laws are not superseded by Federal law." [*Id.* at 87]. Section 11 of the Plan states that it "is intended that the Plan be an unfunded plan maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees of employer. As such the Plan is intended to be exempt from otherwise applicable provisions of Title I of ERISA, and any ambiguities in construction shall be resolved in favor of an interpretation which will effectuate such intention." [*Id.*]. The Plan seems to say that it both is and is not a Top Hat plan – the language refers to the "select group of management" that it seeks to compensate, but it also is "intended to be exempt from otherwise applicable provisions of [ERISA]." [*Id.* at 81-87]. It seeks to be administered by Department of Labor Regulations but be enforced by the laws of Kentucky. [*Id.*] The Plan language is overall a neutral factor, but the other three factors favor the Defendants' position that the Plan is a Top Hat plan, and the Court finds that the Plan could be interpreted as a Top Hat Plan.

          ii.     Bonus Plan

The Plan states that it is "designed to provide specific benefits to a select group of management and highly compensated employees who contribute materially to the continued growth, development, and future business success of [WIT], and to provide flexibility to the Employer in attracting and retaining highly skilled executive employees." [*Id.* at 81]. This express purpose could be interpreted as one that is providing an additional incentive to employees to encourage performance or retention, or for superior performance. *Wilson*, 930 F.3d at 435–36. Because the Plan refers to the retention of executive employees, it is reasonable to interpret the Plan as "providing for payments made 'as bonuses for work performed.'" *Id.* at 438 (citing 29 C.F.R. § 2510.3-2(c)). Looking at the language of the Plan, as discussed above, the Plan also states

11

that it "intended to be exempt from otherwise applicable provisions [ERISA]," and seeks to be administered by Department of Labor Regulations but be enforced by the laws of Kentucky. [DE 1-2 at 87]; *Kolkowski*, 448 F.3d at 850. The Court finds that the Plan could be interpreted as a bonus plan.[2]

It is unclear whether the plan is preempted as a Top Hat plan or if it is exempted under ERISA as a bonus plan. "All doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.[3] Because the Plan could be interpreted either as a Top Hat plan or a bonus plan, the Court must remand this case back to state Court. *See Knowlton v. Pilkington Holdings, Inc.*, No. 3:20 CV 2292, 2021 WL 397393, at *7 (N.D. Ohio Feb. 4, 2021) ("the Court does not hold that Plaintiffs' interpretation [that no ERISA plan existed] is the correct one, only

---

2 Hester also argues that Defendants have "had the benefit of not having to meet ERISA requirements" for "over 15 years" and that seeking "to be covered by ERISA" now "is disingenuous and runs counter to the purpose of ERISA." [DE 12 at 126]. He also contends that asserting ERISA protection is "in direct contravention" of Defendants' prior arguments, and that they have "reversed their previous position on whether this claim should be in state court," ostensibly because, in "a State Court Pleading . . . Defendants do not argue that Plaintiff isn't entitled to benefits under the Plan, but rather that 'Hester forfeited the right to payment when he breached his duty of loyalty'" and "it was the Defendants who raised the issue of Plaintiff's claim for benefits in state court, 'clearly treating that claim as one where the State Court had jurisdiction." [DE 12 at 127-28]. Hester also states that "[i]t appears that the Defendants are attempting to forum shop to delay payment of benefits." [DE 12 at 128]. These persuasive arguments are unsupported in his briefing and the Court thus did not consider them. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also Singleton v. Astrue*, No. CIV. 09-333-GFVT, 2010 WL 6004448, at *3 (E.D. Ky. June 28, 2010), *report and recommendation adopted,* No. CIV. 09-333-GFVT, 2011 WL 843965 (E.D. Ky. Mar. 9, 2011), ("It is well-established that courts are not obligated to consider unsupported arguments inadequately developed in the briefs") (quoting *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049 (6th Cir. 1994) (Table) (internal quotation marks and formatting omitted).
3 Although the parties may have been confused at times between express and complete preemption in the briefing, Defendants other arguments and their arguments in the Motion to Dismiss go to whether Hester's claims are preempted under § 1144 ("express" preemption). Because this Court has determined that it lacks jurisdiction, preemption under § 1144 is a question that must be left to the state court; this Court "lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995); *see also Fritts v. Khoury*, 933 F. Supp. 668, 672 (E.D. Mich. 1996).

that under such an interpretation, federal jurisdiction is not established and this action must therefore be remanded").

### 2. Attorney Fees

Hester also requests attorney's fees and costs incurred as part of his Motion for Remand. [DE 12 at 128-29]. Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award of costs and expenses under this section lies within the discretion of the court. *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1061 (6th Cir. 2008). Furthermore, "an award of fees and costs should be affirmed if 'fair and equitable under all the circumstances.'" *Id.* (quoting *Morgan Guar. Tr. Co. of New York v. Republic of Palau*, 971 F.2d 917, 923–24 (2d Cir. 1992)). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005) ("Conversely, when an objectively reasonable basis exists, fees should be denied"). The non-removing party has the burden to "establish that the . . . removal attempt was not objectively reasonable." *Warthman*, 549 F.3d at 1061. The Court lacks subject matter jurisdiction, and the case is remanded. But because of the interpretation and legal complexity discussed above, the Court finds that Hester has not shown that Defendants lacked an objectively reasonable basis for removal. As a result, the request for fees and costs is denied. *See Knowlton*, 2021 WL 397393, at *8.

## IV. CONCLUSION

Because the Court finds that it lacks jurisdiction, the Defendants' Motion to Dismiss [DE 11] cannot be considered by this Court. For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Hester's Motion to Remand [DE 12] is **GRANTED**;

(2) Hester's Request for Attorney's Fees and Costs [DE 12] is **DENIED**;

(3) WIT's Motion to Dismiss [DE 11] is **DENIED as moot**.

*Rebecca Grady Jennings, District Judge*
United States District Court

January 6, 2022

Cc: Counsel of record